IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARCHER-DANIELS-MIDLAND COMPANY | § | |
| d/b/a ADM GRAIN COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | C.A. NO. 2:16-cv-367 |
| | § | Admiralty – Rule 9(h) |
| M/V PACIFIC HARMONY, her engines, | § | |
| tackle, appurtenances, etc., *in rem*, | § | |
| CLOUD JET, LTD., ISTANBUL | § | |
| DENIZCILIK DENIZ VE | § | |
| TAŞIMACILIĞI AŞ, and | § | |
| AUSTRAL ASIA LINES, | § | |
| *in personam* | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Archer-Daniels-Midland Company d/b/a ADM Grain Company, and files this its Verified Original Complaint against the M/V PACIFIC HARMONY, *in rem*, and Cloud Jet, Ltd., Istanbul Denizcilik Deniz Ve Taşimaciliği AŞ, and Austral Asia Lines, *in personam*, and would respectfully show the Court as follows:

## I.
## JURISDICTION AND VENUE

1.     This suit arises from Defendants' breach of a maritime contract with Plaintiff and is within the admiralty and maritime jurisdiction of the United States and this Honorable Court in

accordance with 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule C of the Supplemental Rules for Certain Admiralty & Maritime Claims.[1]

2. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 and for the reasons set forth in this Complaint.

## II.
## PARTIES

3. Archer-Daniels-Midland Company d/b/a ADM Grain Company ("ADM") is the operator of a grain elevator at the Port of Corpus Christi, Texas.

4. The M/V PACIFIC HARMONY (the "Vessel") is an ocean-going vessel, commonly described as a general cargo ship, bearing the official number 9701451. The Vessel is of foreign registry, documented and registered under the flag of Hong Kong, China.

5. At all relevant times hereinafter mentioned and material hereto, Cloud Jet, Ltd. ("Cloud Jet") was and is the Vessel's owner. Cloud Jet is a foreign corporation or business entity.

6. At all relevant times hereinafter mentioned and material hereto, Istanbul Denizcilik Deniz Ve Taşimaciliği AŞ ("Istanbul Denizcilik") was and is the Vessel's manager. Istanbul Denizcilik is a foreign corporation or business entity.

7. At all relevant times hereinafter mentioned and material hereto, Austral Asia Line Pte. Ltd ("Austral") was and is the Vessel's time charterer. Austral is a foreign corporation or business entity.

## III.
## FACTS

8. As stated above, ADM is the operator of a grain elevator at the Port of Corpus Christi.

---

[1] Pursuant to the attached Letter of Undertaking (Exhibit J) signed on August 19, 2016, while the Vessel was still within this District, the attached Letter of Undertaking was executed confirming that, in lieu of arrest, a bond or cash deposit in the sum of $120,000.00 would be deposited with the registry of the court.

9. The tariff applicable to ADM's grain elevator at Corpus Christi is "ADM Grain Co. Elevator Tariff No. 2," effective October 1, 2005, as thereafter amended (the "ADM Tariff").[2]

**The Terms of the ADM Tariff**

10. Section I of the ADM Tariff, captioned "General Rules and Regulations," makes clear in its Paragraph A (sub-captioned "Notice to Public"), that the ADM Tariff "constitutes notice to the public, shippers, users, [and] vessels ... which utilize the ADM Grain Co. berth(s)" of the terms of the ADM Tariff, including its "provisions, rates, charges, rules, and regulations [which] shall apply to all berth activities and related services provided in this tariff."[3]

11. Section II of the ADM Tariff, captioned "Vessels and Filing," in its Paragraph E (sub-captioned "Filing Application for Berth"), provides in applicable part as follows:

> The signed Application for Berth, when received by the elevator, and/or the berthing of the vessel, shall constitute a contract between ADM GRAIN CO., and users, the vessel, its owners, and operators to abide by the provisions, rates, charges, rules and regulations set out in this Tariff. …. Users, the vessel, its owners, and operators agree to be jointly and severally liable for charges of whatsoever nature for any liabilities arising from this Tariff.[4]

12. Section VI of the ADM Tariff, captioned "Definitions," defines "OWNERS/OPERATORS" as follows:

> The vessel, its Master, owners, managers, operators, charterers, persons in charge, and/or agents, and/or others engaged in the use of and/or mooring of vessels at the elevators(s) and/or elevator facilities and activities conducted at the elevator(s) and/or elevator facilities.[5]

13. That same definitional section defines "USERS" as follows:

> The term "user" or "users" shall include all entities, including vessels, their Masters, owners, managers, operators, charterers,

---

[2] A copy of the ADM Tariff is attached as Exhibit A.
[3] See Exhibit A.
[4] See id.
[5] See id.

persons in charge, and/or agents, and/or others engaged in the use of and/or mooring of vessels at the elevator(s) and/or elevator facilities and activities conducted at the elevator(s) and/or elevator facilities.[6]

14. Section II of the ADM Tariff, captioned "Vessels and Filing," in Paragraph I (sub-captioned "Closest Available Anchorage"), provides as follows:

> Vessels filing an Application for Berth at the ADM Grain Co. elevators in either Galveston or Corpus Christi will be required to remain within the commercial limits of the respective port, i.e. Galveston or Corpus Christi, Texas. If the vessel fails to comply with this requirement and another vessel(s), although having filed an Application for Berth later, is/are anchored closer to the elevator than the subject vessel, ADM Grain Co. may, at its discretion, by-pass the vessel failing to comply with this requirement if loss of berth time may be avoided thereby.
>
> *If any vessel fails to arrive within 2 hours of being ordered to a berth, due to circumstances or conditions within the control or due to the fault of the vessel, its owner(s), operator(s), charterer(s), agent(s), or employee(s), the vessel, its owner(s), operator(s), charterer(s), and/or agent(s) shall be jointly and severally liable for a dead berth charge of $5,000 for each hour or fraction thereof until the vessel is moored in berth, regardless of intervening circumstances of any nature. Such charge shall be assessed as liquidated damages.*[7]

15. Section IV of the ADM Tariff, captioned "Schedule of Changes," in Paragraph R (sub-captioned "Payment of Invoices"), provides in relevant part as follows:

> All invoices for charges at the respective Galveston or Corpus Christi elevators are due and payable at the respective ADM Grain Co. Administrative Office in Galveston, Texas or Corpus Christi, Texas *upon presentation*.[8]

16. Finally, Section I of the ADM Tariff, captioned "General Rules and Regulations," provides in its Paragraph F (sub-captioned "Remedies for Enforcement of Tariff") as follows:

---

[6] *See id.*
[7] *See id.* (emphasis added).
[8] *See id.* (emphasis added).

> ADM GRAIN CO. shall have all remedies available to it at law, in equity and/or under maritime law to enforce this Tariff. All users and/or vessels berthing at the ADM GRAIN CO. elevator and/or elevator facilities agree to pay all reasonable attorneys' fees and costs in the event ADM GRAIN CO. incurs such attorneys' fees and costs in connection with the enforcement of any provisions of this tariff, the collection of any charges, or in defending against any and all disputes, claims, or causes of action brought by the user and/or vessel against ADM GRAIN CO.[9]

**The Vessel Failed to Proceed to Berth within the Time Required by the ADM Tariff**

17. The Vessel arrived in the Port of Corpus Christi on August 5, 2016.[10] The Vessel was directed to the layberth where she was alongside and made fast on August 5, 2016.[11] Thereafter, the Vessel's crew spent over ten days preparing the Vessel's cargo holds for inspection.[12]

18. However, after an examination of the Vessel's cargo holds conducted by the National Cargo Bureau ("NCB") on August 14, 2016, the NCB rejected all the cargo holds on "account bulkheads not 'grain tight.'"[13]

19. On August 16, 2016, the NCB returned to the Vessel to reinspect the cargo holds.[14] On that same date, the NCB issued its Certificate of Readiness approving the cargo holds for loading.[15]

20. On August 16, 2016 at 1200 hours, the Vessel's Notice of Readiness ("NOR") was presented to and received by ADM.[16] The submission and receipt time for the NOR was also

---

[9] *See id.*
[10] *See* Statement of Facts ("SOF") attached as Exhibit B.
[11] *See id.*
[12] *See id.*
[13] *See id.*; *see also* email from the Vessel's agent, Southport Agencies – Houston ("Southport") dated August 15, 2016 sent at 1734 hours in which it confirmed to ADM that, while the NCB had approved stability calculations for the voyage, it nevertheless was "withholding issuing the NCB Certificate of Readiness, until which [sic] time the vsl completes sealing up the cracks/crevices in the vertical bulkheads and makes them 'Grain Tight.'" Southport further advised that "NCB is expected back on board am/16/Tuesday to check status." A copy of the foregoing email from Southport is attached as Exhibit C.
[14] *See id.*
[15] A copy of the Certificate of Readiness is attached as Exhibit D.
[16] A copy of the NOR, reflecting the foregoing date and time, is attached as Exhibit E.

confirmed in an email from ADM dated August 17, 2016 and sent to Dix Agency ("Dix") and the Vessel's agent, Southport Agencies – Houston ("Southport") at 8:55 AM.[17]

21.     On August 16, 2016 at 1200 hours, the vessel also submitted its Application for Berth Ocean Vessels ("Application for Berth") and it was received by ADM on that same date and time.[18]

22.     As recorded on the SOF, upon ADM's receipt of the NOR and Application for Berth at noon on August 16th, the Vessel was immediately ordered to shift from the layberth to the loading berth.[19] ADM's email of August 17, 2016 also confirmed that, upon submission to and receipt of the NOR by ADM at 1200 hours on August 16th, the Vessel was immediately ordered to the open ADM loading berth.[20] Both the SOF and ADM's email of August 17th further noted that Pilots were ordered for the shifting of the Vessel at 1500 hours on August 16th but, upon arriving aboard, were immediately cancelled by the Vessel's Master because the Vessel was unable to shift because of unsecured pontoons on top of her hatch covers.[21] Indeed, Southport's email of August 16th frankly admitted that the reason the Master released the "Pilots, tugs & Lines" at 1503 hours on August 16th was because the Vessel was "[n]ot ready to shift due to unsecured Pontoons on top of hatch covers."[22]

23.     Moreover, the SOF further suggests that the Vessel was also unable to timely shift to the loading berth due to its inability to comply with the well-known 138-foot air-draft restriction to access the loading berth at the ADM grain elevator in Corpus Christi, Texas.  (That restriction is

---

[17] A copy of ADM's email is attached as Exhibit F.
[18] A copy of the Application of Berth is attached as Exhibit G and it reflects the 12:00 noon receipt time by ADM. The submission and receipt times for the Application of Berth were also expressly acknowledged in an email which Southport sent to ADM on August 16, 2016 at 6:42 PM. A copy of the foregoing email from Southport is attached as Exhibit H.
[19] See Exhibit B.
[20] See Exhibit F.
[21] See Exhibits B and F.
[22] See Exhibit H.

in place due to the need to clear the Harbor Bridge in Corpus Christi.)  The SOF notes that the reason for the dismissal of the pilot and tugs was not only because the pontoons were "still loose on deck," but also because the mast was "not yet fixed."  "Repairs to the mast" (which ADM believes required its shortening or removal to clear the Harbor Bridge) were not completed until 0545 hours on the morning of August 17, 2016.[23]

24. Once the "repairs" to the mast were completed and the pontoons were stacked and the hatches were properly secured, the Vessel retendered a Notice of Readiness on August 17, 2017 at 0545 hours on August 17th.[24]  Thereafter, at 0626 hours, ADM confirmed the Vessel should still proceed to the loading berth and a pilot for shifting the Vessel was ordered for 0930 hours on the morning of the 17th.[25]

**<u>Defendants Violated the Terms of the ADM Tariff</u>**

25. Under Section II, Paragraph I of the ADM Tariff, the two-hour requirement for arrival at the loading berth commenced to run on August 16th at 1200 hours when the Vessel was instructed to shift from the layberth to the loading berth.  The Vessel was unable to proceed with the shifting ordered by ADM, however, because of the Vessel's failure to timely secure all pontoons on top of her hatch covers and the need to modify the Vessel's mast.  The pilots and tug which had arrived at 1500 hours on August 16th, therefore, had to be released, postponing arrival at the loading berth by a day.  This failure to timely arrive at the loading berth was undisputedly due to "circumstances or conditions within the control or due to the fault of the vessel, its owner(s), operator(s), charterer(s), agent(s) or employee(s)" as defined in Section II, Paragraph I of the ADM Tariff.

---

[23] *See* Exhibit B.
[24] *See id.*
[25] *See id.*

26. Accordingly, and as set forth in ADM's email dated August 17, 2016, ADM placed Defendants on notice that ADM was invoking the dead berth claim provided for in Section II, Paragraph I of the ADM Tariff.[26] ADM estimated in this email that, provided the Vessel arrived at the ADM loading berth on August 17, 2016 at 1130 hours (as had been previously represented by the Vessel's agent), the dead berth charge would be $120,000 (calculated for a delay of 24 hours or fraction thereof at $5,000 per hour). Indeed, in its email sent on August 16th at 6:42 PM, Southport expressly acknowledged its understanding that ADM would be "issuing a penalty letter, as per their Tariff to the vessel for being unable to shift to the berth when ready to do so."[27]

27. Due to the failure to shift in a timely way, the Vessel did not ultimately arrive at the ADM loading berth until just after twelve noon on August 17, 2016.[28] Therefore, there was a delay of 24 hours in arrival due to the fault of the Vessel or due to circumstances or conditions within its control.

28. Accordingly, Defendants are jointly and severally liable for a dead berth charge in the amount of $120,000. ADM has issued its commercial invoice to the Vessel's agent in accordance with its normal procedures reflecting the foregoing dead berth charge.[29]

## IV.
## CAUSE OF ACTION - BREACH OF MARITIME CONTRACT

29. Pursuant to the terms of the ADM Tariff and the events described above, Defendants are contractually obligated to pay for the damages sustained by ADM, namely the dead berth charge in the amount of $120,000, together with reasonable attorneys' fees, costs, and expenses incurred

---

[26] *See* Exhibit F.
[27] *See* Exhibit H.
[28] *See* Exhibit B.
[29] A copy of that commercial invoice is attached as Exhibit I.

by ADM.[30]  Moreover, as the damages claimed herein arise from ADM's provision of "necessaries" to the Vessel (i.e., wharfage/dockage) pursuant to the Federal Maritime Lien Act, 46 U.S.C. § 31342 *et seq.*, ADM has a maritime lien against the Vessel for the full amount of its claim.

30. All damages, loss, and expenses sustained by ADM are without fault on the part of ADM.

31. Despite amicable demand, this matter is unable to be resolved, leaving ADM with no alternative but to institute legal proceedings to secure recovery of its damages.

32. For all of the reasons given above, ADM has a maritime lien against the Vessel and all claiming interest in the Vessel, all of whom are jointly and severally liable to ADM for the amounts due as aforesaid, and this Complaint is filed for enforcement of said lien.

## V.
## PRAYER

WHEREFORE, ADM prays that after due proceedings have been had that:

1. Process in due form of law according to the rules and practices of this Court and causes of admiralty and maritime jurisdiction be issued against the M/V PACIFIC HARMONY authorizing the *in rem* arrest and seizure of said vessel, if necessary;

2. All persons claiming any rights, title, and interest in said vessel be summoned to appear and answer under oath, all and singular, the matters aforesaid, the bond or cash deposit in the amount of $120,000.00 and referenced in the Letter of Undertaking attached as Exhibit J, be timely deposited in the Court's registry, and that, if necessary, the Vessel be condemned and sold to pay the demands as aforesaid, with interest from date of law, costs, and disbursements; and

3. Judgment be entered in favor of ADM against the Vessel, *in rem*, and Cloud Jet, Istanbul Denizcilik, and Austral, *in personam*, and all others claiming an interest in the Vessel, jointly and severally, in the amount of $117,132.61, together with all other amounts shown at trial, all other losses and expenses permitted by law, including costs, attorneys' fees, and interest, and all such other and further relief as justice may require.

---

[30] Less payment(s) on behalf of the Vessel, ADM's commercial invoice reflects that the principal amount owed is $117,132.61.

Respectfully submitted,

*/s/ Dimitri P. Georgantas*
Kevin P. Walters
Attorney-in-Charge
Federal I.D. No. 5649
Texas State Bar No. 20818000
Dimitri P. Georgantas
Federal I.D. No. 2805
Texas State Bar No. 07805100
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
1600 Smith Street, Suite 5000
Houston, Texas 77002
Telephone:  713.224.8380
Facsimile:   713.225.9945
Email:      dimitri.georgantas@roystonlaw.com
            kevin.walters@roystonlaw.com

and

John (Jack) C. Partridge
Texas State Bar No. 15534600
Federal I.D. No.: 10470
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
1300 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78401
Telephone: 361.884.8808
Facsimile: 361.884.7261
Email:      jack.partridge@roystonlaw.com

ATTORNEYS FOR PLAINTIFF
ARCHER-DANIELS-MIDLAND COMPANY
d/b/a ADM GRAIN COMPANY

OF COUNSEL:
BURKE & PARSONS

Michael J. Walsh
100 Park Ave, 30 FL
New York NY 10017-5533
Telephone: 212.354.3800
Facsimile: 212.221.1432
Email: walsh@burkeparsons.com